(C. D. 326)

LAWRENCE BARKER *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 2, 1940)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath*, special attorney, and *James F. Donnelly*, junior attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

KEEFE, Judge: The plaintiff in this case imported two pedigreed stallions and one mare and made entry thereof as entitled to exemption from duty under the provisions of paragraph 1606 of the Tariff Act of 1930, as animals imported by a citizen of the United States specially for breeding purposes. The collector assessed duty thereon at the rate of 20 per centum ad valorem under the provision for horses in paragraph 714 of the same act claiming that subsequent to importation the animals had been entered in races. The plaintiff contends that the requirements of paragraph 1606, and the applicable customs regulations, were complied with and that the horses are consequently entitled to free entry.

At the trial the importer testified that he was an American citizen engaged in the business of breeding race horses; that the animals here in question were imported from Chile and that he imported them specially for breeding purposes and it was his intention to retire them for breeding; that, had he not believed they could be used successfully for breeding, he would not have imported them; and that he had previously imported a number of horses for breeding purposes and had actually bred horses. It was further established that the plaintiff filed on entry the affidavits which were accepted by the Secretary of Agriculture who issued certificates of pure breeding, admitted in

evidence as Exhibit 1. The Government conceded full observance with the free entry regulations.

We are of the opinion that plaintiff, in the evidence summarized in the foregoing paragraph, made a *prima facie* case. However, counsel for the importer was not content to rest his case upon the proof offered and evidently, in an effort to meet the statement made by the appraiser in his timely answer to the protest, offered testimony of the plaintiff and other witnesses that, in our opinion, was largely immaterial and irrelevant.

The importer testified that he trained and raced the horses in question and that while it was his intention at the time of importation to retire said horses for the purpose of breeding, his purpose in so racing them was to establish a racing record for them in order to create a greater demand and a higher price for the foal. That the racing of such animals is incidental to the primary purpose of breeding the same. Most of said testimony was admitted without objection and had objection been made we believe the same should have been excluded, because, as we see it, an attempt was made to establish a commercial value for breeding, and that is foreign to the sole issue in this case, to wit, the intent of the importer at the time of entry.

The plaintiff also offered testimony of one Johnson who was the manager of the importer's affairs. Counsel for the Government objected to his testimony as wholly irrelevant and incompetent and moved to strike the same from the record. The objections were overruled and the motion denied by the judge hearing the evidence. In our opinion his testimony is wholly immaterial except the fact that he had personal knowledge that the importer was engaged in the horse breeding business. We therefore believe that the court should have sustained the objections.

One Carlton R. Burke, who was chairman of the California Horse Racing Board, was permitted to testify as to the custom and practice of racing foreign bred horses before retiring them for breeding, and as to the laws of California on racing. Counsel for the Government strenuously objected to all such questions and we are of the opinion that the court hearing the evidence was in error in permitting him to so testify. As there is nothing in any of the evidence offered by this witness that would tend to support the plaintiff's claim that he intended to import these race horses for breeding purposes, his testimony is wholly immaterial and irrelevant to the issue in the case.

The Government, without offering a scintilla of evidence, and resting upon the proof offered by plaintiff, submits that Congress, in providing for free entry of animals imported specially for breeding purposes under paragraph 1606, intended that such animals would be admitted to free entry, 1, if they had a breeding value prior to importation, and, 2, were definitely intended by the importer at the time of

importation to be used specially for breeding purposes, and, 3, that the breeding value is established by registration and certificates required by the statute to be produced to prove the purebred qualities of the animals, and that the act of plaintiff in racing the animals in question, in order to establish a breeding value, is inconsistent with the claim for free entry.

Replying to the argument of the Government that under paragraph 1606 such animals would be admitted to free entry only if they had a breeding value prior to importation, we can find nothing either in the statute or in the regulations that in any way tends to establish that such animals must have a breeding value prior to importation. Under the statute purebred animals of a recognized breed must be duly registered in a book of record recognized by the Secretary of Agriculture for that breed. Therefore, if at the time of importation the animals fulfill these requirements, and the regulations are complied with, the terms of the statute are fully met. We are, therefore, of the opinion that such argument is without merit.

We are in accord with the statement of counsel for the Government that Congress, in providing for the free entry of animals for breeding purposes, requires that the importer definitely intended at the time of importation that they be used specially for that purpose. The statute demands that the importer either intended to use the same himself for breeding purposes or sell them for that purpose. At the time of entry in this case the importer filed this affidavit to show his intent to use the animals specially for breeding or for sale for such purpose. The collector in denying free entry, in effect, questioned the truth of the affidavit. At the trial, not only was it admitted that the affidavit was filed, but, in addition, the importer testified that it was and is his intent to use the animals specially for breeding purposes.

We are not impressed with the argument that breeding value is established by the registration and certificates required by statute to be produced to prove the purebred qualities of the animals. Congress recognized that pure breeds of animals are valuable to the people of the United States for the purpose of improving the quality of our stock and therefore provided for the free entry thereof when imported for breeding purposes. The commercial value to breeders of animals so imported is a matter for the breeders to develop after importation and for the purposes of free entry any evidence as to the development of such commercial value is immaterial and irrelevant as to any issue in the case before us.

Therefore the sole question remaining is whether the use of the horses is inconsistent with the claim for free entry. As we view it, paragraph 1606 provides for the free entry of any animal imported by a citizen of the United States specially for breeding purposes. It is a general provision and is not limited to race horses nor to animals

imported for commercial purposes. We do not believe that the words "specially for breeding purposes" in the statute means exclusively for that purpose. Certainly Congress could not have intended that animals imported specially for breeding purposes could not be used for any other purpose except breeding. Where the importer has established by uncontradicted evidence that at the time of importation it was his purpose in bringing the animals into the United States to breed the same, it is immaterial that such animals are afterwards used for some other purpose unless such use is wholly inconsistent with the intent declared upon entry. We do not believe that the training and racing of such animals in order to establish commercial value for the foal is inconsistent. The importing of animals of racing stock for breeding purposes implies the incidental use of demonstrating by actual racing that the animals possess the necessary qualifications. If the imported animals were used or intended to be used for breeding purposes the provisions of the statute are satisfied and the common practice of exhibiting the animals or otherwise using them, in order to create a demand for the offspring, is not material or relevant to the question of the intention of the importer to use the same specially for breeding purposes. If it was true that Congress did not intend such animals to be used for any other purpose, it would be inconsistent with the claim for free entry for one importing a Holstein cow specially for breeding purposes to join a cow-testing association, in order to prove a producing record quantity of milk or of the butterfat content thereof, for the purpose of showing the value of the animal for breeding. In fact, if that theory of the Government is sound, a farmer who imported a purebred cow could not milk her and sell the milk. Further, a farmer who imports purebred animals especially for breeding would not be allowed to use them in farm work, which our common knowledge of farming teaches us is the common or ordinary practice on the farm. Surely, the showing of purebred dogs in various dog shows, in an effort to establish a record for blue ribbon prizes, would not be inconsistent with the claim for free entry of the animals, nor would the training of purebred hunting dogs, to prove their superior ability, be inconsistent with the claim for free entry.

As the plaintiff has conclusively established that it was his intention at the time of importation to use the horses in question for breeding purposes, judgment will be entered in favor of the plaintiff, directing the collector to reliquidate the entry and make refund of all duties taken.